**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| **JOHN DOE, a minor, by and through his** | ) | |
| **Parents and next friends, JANET DOE and** | ) | |
| **JAMES DOE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 24cv2156** |
| | ) | |
| **ALLEY BARDFIELD and BOARD OF** | ) | |
| **EDUCATION OF DECATUR PUBLIC** | ) | |
| **SCHOOLS d/b/a DECATUR PUBLIC** | ) | |
| **SCHOOLS d/b/a DECATUR PUBLIC** | ) | |
| **SCHOOL DISTRICT #61** | ) | |
| **d/b/a DECATUR PUBLIC SCHOOLS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT AT LAW

NOW COME Plaintiffs, JOHN DOE, a minor, by and through his Parents and Next

Friends, JANET DOE and JAMES DOE, by and through their attorneys, CUNNINGHAM

LOPEZ LLP, and complaining of Defendants, ALLEY BARDFIELD and BOARD OF

EDUCATION OF DECATUR PUBLIC SCHOOLS d/b/a DECATUR PUBLIC SCHOOL

DISTRICT #61 d/b/a DECATUR PUBLIC SCHOOLS, Plaintiffs state as follows:

## NATURE OF THE CASE

1.      Since the return to in-person instruction after COVID-19, Defendant Board of

Education of Decatur Public Schools has overseen an unimaginable rise in physical abuse against

its students by its employees.  Defendant Board's policy failed to require its employees to

complete state-required training on physical abuse, sexual assault, misconduct, and grooming.

This policy allowed its employees unfettered access to children without fear of any consequence

and culminated in Defendant Alley Bardfield's months-long grooming and sexual abuse of

Plaintiff John Doe as described herein. Plaintiffs aim to quash this outbreak of malfeasance by the Defendant before it turns pandemic.

<u>**JURISDICTION AND VENUE**</u>

2.      This case is brought under 42 U.S.C § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution, and various state law claims.

3.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. Venue is proper under 28 U.S.C. § 1391(b).

4.      On information and belief, all or most of the parties reside in this judicial district, and the events giving rise to the claims herein all occurred within this district.

<u>**PARTIES**</u>

5.      Plaintiff Janet Doe is the mother of the minor child John Doe. She is and was a citizen of the United States and citizen of the State of Illinois.

6.      Plaintiff James Doe is the father of the minor child John Doe. He is and was a citizen of the United States and citizen of the State of Illinois.

7.      Plaintiff John Doe is the minor child of Janet and James Doe. He is and was a citizen of the United States and citizen of the State of Illinois.

8.      Defendant Board of Education of Decatur Public Schools #61 (hereinafter "Board") is a body politic and corporate under the laws of the State of Illinois. Defendant Board maintains offices at 101 W Cerro Gordo St., Decatur, Illinois 62523. Defendant Board oversees approximately 7,700 students and 15 schools.

9.      Decatur, Illinois is a small community consisting of less than 75,000 residents.

10.     Defendant Board is and was responsible for the governance, organizational, and financial oversight of the staff and administration of Decatur Public Schools #61, including Hope Academy.  Defendant Board, acting through its agents, servants, and/or employees, is engaged in, among other things, the provision of education, care, and development services.  Defendant Board is responsible for its own acts and omissions and the conduct of its employees and/or agents under *respondeat superior.*

11.     Defendant Alley Bardfield, aged 32, is and/or was an employee of the Board. At all times relevant herein, Defendant Bardfield worked as a substitute teacher at Hope Academy School, located at 955 N Illinois St., Decatur, Illinois 62521.

12.     At the time of the incidents in this Complaint, Defendant Bardfield engaged in the complained of conduct while acting within the scope of her employment and under color of law. Defendant Bardfield is sued in her individual capacity and as agent and/or employee of Defendant Board.

## FACTS COMMON TO ALL COUNTS

13.     At all times relevant, Hope Academy School is and was a kindergarten through eighth grade educational facility.

14.     At all times relevant, Defendant Board owned, operated, managed, maintained, and controlled Hope Academy and the employees and/or agents therein.

15.     At all times relevant, Plaintiff John Doe, 11 years of age, attended Hope Academy and was a sixth-grade student.

16.     At all times relevant, Defendant Bardfield's job duties and responsibilities included and involved direct, daily contact with students of Hope Academy.

17.     Defendant Bardfield began her employment as a substitute teacher in or about October, 2023.

18.     Defendant Bardfield's introduction to and contact with Plaintiff John Doe arose directly from Bardfield's role as teacher at Hope Academy and employee and agent of the Board.

19.     Defendant Bardfield was assigned as one of John Doe's teachers in approximately October of 2023.

20.     Almost immediately thereafter, Defendant Bardfield began her grooming of Plaintiff and other students.

21.     Defendant Bardfield gave out her personal cellular phone number to a student other than John Doe at Hope Academy.

22.     Plaintiff John Doe subsequently obtained Defendant Bardfield's personal cellular phone number from the other classmate after the other classmate informed him that he had gone to Bardfield's residence on multiple occasions to "play".

23.     Defendant Bardfield's dissemination of her personal cellular phone number to students was a direct violation of Defendant Board's Code of Professional Conduct, which specifically prohibits communication between students and staff on personal devices.

24.     Defendant Bardfield hosted male children attending Hope Academy under the guise of "play dates" at her home.  Defendant organized said dates by texting the minor children with her personal cellular phone device.

25.     Between October 2023 and December 2023, Plaintiff John Doe visited Defendant Bardfield at her home several times.

26.     On one occasion, Defendant Bardfield falsely informed Plaintiff that other classmates of Plaintiff would be present at her home for a play date.  However, when Plaintiff arrived, Plaintiff was the only child there other than the Defendant's own children.

27.     In or around February 2024, Defendant Bardfield invited Plaintiff over to her residence during a time that her husband was not home.  During this visit, after Defendant put her own children to bed, Defendant watched television late into the night with Plaintiff.  During this encounter, Defendant intentionally sat in close proximity to Plaintiff, causing contact between her legs and the Plaintiff's.

28.     Days after the February 2024 visit, Defendant Bardfield texted Plaintiff John Doe while on school property and during school instruction stating that she "had something to tell you."  Later during the school day Defendant Bardfield texted Plaintiff that "I think you are cute."

29.     At all times relevant, Defendant Bardfield continually texted and communicated through her personal cellular phone device with John Doe, including on school property and during school instruction.

30.     Defendant Bardfield sent Plaintiff money through social media, including through Cash App, a mobile phone payment service.

31.     Throughout the course of the school year, in addition to obtaining Plaintiff John Doe's cell phone number, Defendant Bardfield obtained Plaintiff's Snapchat account and TikTok accounts and would communicate with John Doe through the same.

32.     Defendant Bardfield's obtaining and initiating contact through Plaintiff's personal social media accounts was a direct violation of Defendant Board's Code of Professional Conduct.

33.     Snapchat is a multimedia instant messaging service.  A principal feature of Snapchat is that pictures and messages are typically available for a short time before they become inaccessible, and impossible to review by parents or law enforcement without special request being made to the platform itself.

34.     Defendant Bardfield proceeded to benefit from this feature, sending Plaintiff naked pictures of herself through Snapchat, which later disappeared.

35.     Defendant Bardfield also requested that Plaintiff John Doe send Defendant Bardfield naked pictures of himself.

36.     In or about March 2024, Defendant invited John Doe over to her house. During that visit Defendant Bardfield performed oral sex upon Plaintiff.

37.     During another, separate, visit in or about March 2024, Defendant again invited Plaintiff over to her house.  Defendant Bardfield then had vaginal sexual intercourse with Plaintiff John Doe.

38.     Within forty-eight hours of the sexual encounter described in paragraph 37, Plaintiff sent a message to Defendant via TikTok, a multimedia video hosting and instant messaging service.  Plaintiff informed Defendant Bardfield that he did not want to engage in the relationship any further.

39.     Shortly after Plaintiff informed Defendant that he did not wish to engage in a relationship any more, Defendant began her attempts to conceal her conduct.

40.     On one occasion at school, Plaintiff John Doe was away from the classroom and at gym and/or recess.  Plaintiff's cellular phone was not on his person and was in Defendant Bardfield's classroom.  During this time, Defendant Bardfield searched Plaintiff's cellular phone and began to delete the TikTok messages between Plaintiff and Defendant Bardfield.

41.     When Plaintiff returned to the classroom, he noticed that the TikTok application was open and that all communications between Plaintiff and Defendant were deleted.

42.     On or around April 3, 2024, Defendant was arrested.  At said time Defendant made a mirandized statement admitting to her sexual encounters with Plaintiff.

43.     At all times relevant, the Board adopted a "Personal Technology and Social Media; Usage and Conduct" policy, which established guidelines for Board employees regarding maintaining professional staff and student boundaries with respect to, among other things, usage of cellular phones and social media.

44.     According to these guidelines, Board employees must not interfere with or disrupt the educational environment, must inform their immediate supervisor if a student initiates inappropriate contact with them via any form of communication, report instances of suspected abuse, use personal technology for personal purposes only during non-work times or hours, and communicate with students using only district-provided technology and only about education.

45.     In addition, the guidelines required that the Board inform employees of the policy, inform building staff about the importance of maintaining high standards in their school relationships, build awareness of the policy, and periodically review the policy and present proposed changes to the Board.

46.     At all times relevant, the Board adopted a "Staff Development Program", which established guidelines that required the Board to implement a staff development program. Among the requirements of the program, within three months of employment, all personnel must complete mandated reporter training in recognizing and reporting child abuse.  Additionally, all personnel must complete evidence-informed training on preventing, reporting and responding to

child sexual abuse, grooming behaviors, and boundary violations, and all personnel must attend annual sexual harassment prevention training.

47.     At all times relevant, the Board adopted an "Employee Code of Conduct", which established guidelines for staff and student boundaries.  According to these guidelines, the Board established an absolute prohibition against touching, fondling, kissing, and making sexual advances to students; it also included a prohibition against inviting students to a staff member's home, and that staff members must use district-provided devices when communicating electronically with students.

48.     Defendant Bardfield never completed any training prior to and subsequent to her hiring at Hope Academy, including training on adult sexual misconduct, ethics on sexual misconduct, recognizing and reporting child abuse, and title IX training.

49.     Defendant Board utilizes a software system that provides notice for its employees, staff, and agents attendance at state-required trainings and other trainings necessary to ensure a safe environment for its students.

50.     Said system indicated that Defendant Bardfield failed to attend the trainings, including those required by 105 ILCS 5/10-23.13, known as Erin's Law.

51.     Defendant Board was aware and had actual knowledge that Defendant Bardfield had not completed said training prior to and subsequent to her hiring.

52.     Despite being aware and having actual knowledge that Defendant Bardfield had not completed the training, Defendant Board hired and retained Defendant Bardfield.

53.     In addition, Defendant Board allowed other teachers, staff, agents and employees to be hired or continue retention despite failing to initially complete the training or subsequent required continuing training.

54.     Defendant Board allowing its teachers, staff, agents, and employees to be hired and/or continue retention despite failing to complete the required training was in direct violation of Erin's Law.

55.     Specifically, Erin's Law requires that schools (i) adopt and implement a policy addressing sexual abuse of children that includes age-appropriate and evidence informed curriculum for students pre-K through 12th grade and (ii) evidence-informed training for school personnel on child sexual abuse, with said training to be completed no later than January 31 of each year.

56.     Defendant Bardfield failed to complete the training required by Erin's Law. Defendant Board had actual knowledge Defendant failed to complete the training and Defendant Board failed to have the appropriate policies and oversight to ensure that its employees completed the training.

57.     Defendant Board failed to provide Plaintiff John Doe with the required age-appropriate and evidence-informed curriculum for his sixth-grade school year, in violation of Erin's Law.

58.     Defendant Board employed a policy, pattern, and practice of failing to adhere, administer, and ensure that its express rules, regulations, and code of conduct was enforced.

59.      Defendant Board employed a policy, pattern, and practice of failing to adhere and comply with State of Illinois laws on training for sexual assault, sexual misconduct, and grooming.

60.     Defendant Board refused to enforce its express rules, regulations, and code of conduct, specifically those regarding physical and sexual abuse, until and unless the State of Illinois, its agencies, or law enforcement get involved.

61.     For example, on at least one occasion prior to the events alleged herein, and in or about Winter, 2024, Defendant Board allowed two teachers of Hope Academy to have sexual relations with one another on school property during school instruction.

62.     On another occasion, in or about the fall of 2021, Defendant Board's teacher slammed a student's head into a desk, causing a concussion.  Said teacher was not terminated but was instead transferred within the district.

63.     On another occasion, in or about September of 2023, a teacher assistant of Defendant Board physically abused a special needs student by grabbing and taking away the student's sensory toy, picking the child up, and throwing him to the ground.  The principal of Defendant's Board's school where the incident took place falsely stated that the special needs student was accidentally dropped.  In reality, the teaching assistant was criminally charged and pleaded guilty on said charges in June 2024.

64.     On another occasion, a long-term substitute teacher of Defendant Board verbally abused an 11-year-old student, culminating in physically throwing the student out of class in October 2023.

65.     On another occasion, in or about February 15, 2024, a student at American Dreamer Stem Academy, Decatur Public Schools #61, was physically assaulted by Defendant Board's employee, a substitute teacher.  Defendant Board did not contact the parent of the student when it occurred.  As of the date of this filing, the substitute teacher is still employed by Defendant Board at American Dreamer Stem Academy.

66.     There is and was widespread physical abuse within Defendant Board's district, especially relative to the size of the district.

67.     The physical abuse to Plaintiff John Doe was not an isolated incident. Nor was the grooming of Hope Academy's students isolated, as Defendant Bardfield gave her personal cellular phone number to another minor student, who then gave it to Plaintiff.

68.     At all times relevant, Defendant Board failed to have or utilize a policy or procedure that required the Board to monitor its agents and employees to ensure its employee-student boundaries were maintained.

69.     Despite the foregoing policies regarding sexual abuse, discrimination, and student-staff boundaries, Defendant Board acted, as a matter of custom, policy, or widespread practice, in a manner that was deliberately indifferent to the plainly obvious risk of sexual misconduct to its students by its lack of training and enforcement on policies intended to prevent sexual abuse and discrimination.  As a result, this deliberate indifference to the training and enforcement of these policies allowed sexual predators to act without fear of punishment for sexual abuse and misconduct and created an unsafe environment for victims of sexual abuse.

70.     As a result of the Board's continuing, widespread, persistent pattern of unconstitutional misconduct by its employees, the deliberate indifference to or tacit authorization of such conduct by the Board's policymaking officials after the notice of misconduct, and the Board's custom of failing to report incidents of abuse, Plaintiff was sexually abused.

## COUNT I
### 42 U.S.C. § 1983 - EQUAL PROTECTION
### ALL DEFENDANTS

71.     Plaintiffs reallege and incorporate paragraphs 1-70 as though fully stated herein in this Count I.

72.     Under the Fourteenth Amendment to the U.S. Constitution, Plaintiff John Doe is entitled to equal treatment under the laws.

73.     As described above, Defendant Bardfield abused, harassed, and otherwise discriminated against Plaintiff John Doe based on sex, in violation of his constitutional rights under the Fourteenth Amendment to the U.S. Constitution.

74.     Defendant Bardfield victimized John Doe based on his membership in a certain class of individuals.

75.     Defendant Bardfield treated John Doe differently than other similarly situated individuals not belonging to the class of Plaintiff.

76.     The differential treatment was intentional and arbitrary, motivated by nefarious and discriminatory purposes, and was not rationally related to any governmental interest.

77.     The acts of Defendant Bardfield were objectively unreasonable, and undertaken with malice, willfulness, and reckless indifference to the rights of others, including Plaintiff.

78.     As a direct and proximate result of the foregoing, Plaintiff John Doe suffered harm.

WHEREFORE, Plaintiffs pray for judgment against Defendants, for compensatory and punitive damages in an amount to be determined at trial, an award of reasonable attorneys' fees and costs, and any other relief as the Court deems equitable and just.

## COUNT II
### 42 U.S.C. § 1983 - SUBSTANTIVE DUE PROCESS
### ALL DEFENDANTS

79.     Plaintiffs reallege and incorporate paragraphs 1-78 as through fully stated herein in this Count II.

80.     Under the Fourteenth Amendment to the U.S Constitution, Plaintiff John Doe possesses a right to bodily integrity.

81.     Based on the conduct as fully described herein, including but not limited to Defendant Bardfield performing oral sex and vaginal sex upon Plaintiff on two separate occasions,  Defendants denied Plaintiff due process under the law as protected by the Fourteenth Amendment to the U.S. Constitution.

82.     Defendant Bardfield's conduct of performing oral sex and vaginal sex unlawfully denied Plaintiff due process of law in a manner that shocks the conscience.

83.     At all times relevant herein, Defendant Bardfield acted under color of law.

84.     Defendant Board made the affirmative decision to hire and retain Defendant Bardfield, a substitute teacher, despite Defendant Board's knowledge that Bardfield did not complete any required training, including training required by Erin's law on sexual assault and grooming.

85.     Defendant Board made the affirmative decision to refuse and fail to follow its' own policies and those required by the state of Illinois, including those required trainings on sexual assault and grooming.

86.     Defendant Board had knowledge that Defendant Bardfield had not completed the training months at least two months after her hiring.

87.     Defendant Board's actions created and increased the risk of harm to Plaintiff John Doe.

88.     Defendant Board's policy, practice, and custom fostered a climate which facilitated abuse, sexual grooming, and sexual assault of its' students, including Plaintiff John Doe.

89.     As a direct and proximate result of the foregoing, Plaintiff John Doe suffered harm.

WHEREFORE, Plaintiffs pray for judgment against Defendant Bardfield, for compensatory and punitive damages in an amount to be determined at trial, an award of reasonable attorneys' fees and costs, and any other relief as the Court deems equitable and just.

**COUNT III**
**42 U.S.C. § 1983 - DUE PROCESS (MONELL)**
**BOARD OF EDUCATION OF DECATUR**

90.    Plaintiffs reallege and incorporate paragraphs 1-89 as though fully stated herein this Count III.

91.    Under the Fourteenth Amendment to the U.S Constitution, Plaintiff John Doe possesses a right to bodily integrity.

92.    Under the Fourteenth Amendment to the U.S. Constitution, Plaintiff John Doe is entitled to equal treatment under the laws.

93.    Defendant Board employed a policy, pattern, and practice of failing to adhere, administer, and ensure that its express rules, regulations, and code of conduct was enforced.

94.    Defendant Board employed a policy, pattern, and practice of failing to adhere and comply with State of Illinois laws on training for sexual assault, sexual misconduct, and grooming.

95.    Defendant Board failed to administer, require, and ensure that the trainings required by Erin's law were complied with by its employees, staff, and agents, including Defendant Bardfield.

96.    Defendant Board failed to administer, require, and ensure that the curriculum and training required by Erin's Law to be provided to its students was complied with, including to Plaintiff John Doe.

97.     Said laws, including Erin's Law, are in effect to prevent the sexual assault and grooming of students, and for students to be aware of the signs of sexual assault and grooming.

98.     Defendant Board hired Defendant Bardfield when it had knowledge that Bardfield had not completed any of its required trainings, including training for adult sexual misconduct, ethics on sexual misconduct, recognizing and reporting child abuse, and title IX training.

99.     Defendant Board continued to employ Defendant Bardfield and other teachers within Hope Academy and District 61 despite its knowledge that said teachers did not take, complete, or pass the required trainings.

100.    Defendant Board's policy, pattern, and practice was executed with deliberate indifference to Plaintiff's John Doe's constitutional protections.

101.    Defendant Board had knowledge that Defendant Bardfield had not completed the training months at least two months after her hiring.

102.    Defendant Board's actions created and increased the risk of harm to Plaintiff John Doe.

103.    Defendant Board's policy, practice, and custom fostered a climate which facilitated abuse, sexual grooming, and sexual assault of its' students, including Plaintiff John Doe.

104.    As a direct and proximate result of Defendant' Board's policy, pattern, and practice, Plaintiff suffered harm.

WHEREFORE, Plaintiffs pray for judgment against Defendant, for compensatory and punitive damages in an amount to be determined at trial, an award of reasonable attorneys' fees and costs, and any other relief as the Court deems equitable and just.

## COUNT IV
## NEGLIGENT HIRING

**BOARD OF EDUCATION OF DECATUR**

105.     Plaintiffs reallege and incorporate paragraphs 1-104 as though fully stated herein this Count IV.

106.     Defendant Board knew or should have known that Defendant Bardfield was unfit to be employed by Defendant Board as a teacher, as Defendant Board knew Defendant Bardfield had not completed training for adult sexual misconduct, ethics on sexual misconduct, recognizing and reporting child abuse, and title IX training, and trainings required by Erin's law, prior to and during her employment with Defendant Board.

107.     Defendant Board knew, or in the exercise of reasonable care should have known, that Defendant Bardfield was unfit to be employed by Defendant Board as a teacher, at the time Defendant Board hired Defendant Bardfield, as at that time she had not completed the identified training.

108.     As a direct and proximate result of the foregoing, Plaintiff suffered harm.

WHEREFORE, Plaintiffs pray for judgment against Defendant, for compensatory and punitive damages in an amount to be determined at trial, an award of reasonable attorneys' fees and costs, and any other relief as the Court deems equitable and just.

<u>**COUNT V**</u>
**NEGLIGENT SUPERVISION**
**BOARD OF EDUCATION OF DECATUR**

109.     Plaintiffs reallege and incorporate paragraphs 1-108 as through fully stated herein this Count V.

110.     Defendant Board had a duty to supervise its agent and/or employee Defendant Bardfield in the every day job functions and responsibilities as a teacher of Hope Academy.

111.     As a teacher at Hope Academy, Defendant Bardfield had daily, direct contact with students, including Plaintiff.

112.     Defendant Board breached its duty in one or more of the following ways:

     a.     failed to monitor Defendant and allowed her to text and communicate with students, including Plaintiff, on school property and during school instruction;

     b.     failed to ensure Defendant abided by its code of conduct, including the guidelines and policies described herein;

     c.     failed to monitor Defendant and allowed her to disseminate her personal phone number to multiple students, including Plaintiff;

     d.     failed to ensure that Defendant completed the required trainings, including those on sexual assault and grooming and those required by Erin's law;

     e.     allowed Defendant to organize and lure minor children, including Plaintiff, over to her home residence; and

     f.     allowed Defendant to sexually abuse Plaintiff.

113.     As a direct and proximate result of the foregoing, Plaintiff suffered harm.

WHEREFORE, Plaintiffs pray for judgment against Defendant, for compensatory and punitive damages in an amount to be determined at trial, an award of reasonable attorneys' fees and costs, and any other relief as the Court deems equitable and just.

### COUNT VI
### NEGLIGENT RETENTION
### BOARD OF EDUCATION OF DECATUR

114.     Plaintiffs reallege and incorporate paragraphs 1-113 as through fully stated herein this Count VI.

115.     Defendant Board knew or should have known that Defendant Bardfield was unfit to be retained as a teacher by Defendant Board, as Defendant Board knew Defendant Bardfield had not completed training for adult sexual misconduct, ethics on sexual misconduct,

recognizing and reporting child abuse, and title IX training, and trainings required by Erin's Law, prior to and during her employment with Defendant Board.

116. Defendant Board knew, or in the exercise of reasonable care should have known, that Defendant Bardfield was unfit to be retained as a teacher by Defendant Board, as at the time Defendant Board hired Defendant Bardfield, as at that time she had not completed the identified training.

117. As a direct and proximate result of the foregoing, Plaintiff suffered harm.

WHEREFORE, Plaintiffs pray for judgment against Defendant, for compensatory and punitive damages in an amount to be determined at trial, an award of reasonable attorneys' fees and costs, and any other relief as the Court deems equitable and just.

**COUNT VII**
**NEGLIGENCE**
**BOARD OF EDUCATION OF DECATUR**

118. Plaintiffs reallege and incorporate paragraphs 1-117 as through fully stated herein this Count VII.

119. Defendant Board, by and through its agents and/or employees, knew or should have known that Defendant Bardfield's conduct, as fully described herein, of texting Plaintiff, sending Plaintiff nude pictures of herself and cash, inviting Plaintiff over to her home, and having sexual intercourse with him, was improper.

120. Defendant Board had a duty through the Illinois State Constitution to provide the right to public education.

121. Defendant Board had a duty to comply with laws, including Erin's Law regarding employee, staff, agent, and student training and education on sexual assault, sexual misconduct, and grooming.

122.     Defendant Board, by and through its agents and/or employees, owed a duty to Plaintiff to report Defendant Bardfield's conduct to law enforcement or DCFS.

123.     Defendant Board's failure to enforce its express rules, regulations, and policies, and its failure to comply with state laws, including Erin's Law, was a willful and wanton disregard of the law, their own policies, and their duty of care as providers under the mandated reporting act and as public servants.

124.     Defendant Board, by and through its agents and/or employees, was negligent in one or more of the following ways:

      a.     failed to prevent the improper conduct, including sexual intercourse, of Plaintiff by Defendant Bardfield;

      b.     failed to report the improper conduct, including sexual intercourse, as required by state law;

      c.     failed to reasonably direct, instruct, supervise, monitor, and train its agents and/or employees, to ensure timely reporting of sexual abuse;

      d.     failed to adequately conduct reference checks, background checks, or employment screening of agents and/or employees;

      e.     hired Defendant Bardfield knowing that she did not complete the requiring training on ethics and sexual conduct and misconduct, including Erin's Law;

      f.     failed to reasonably direct, instruct, supervise, monitor and train its agents and/or employees to be aware of the care and treatment needed for each student, including Plaintiff;

      g.     failed to provide Plaintiff the curriculum and training required by Erin's Law; and

      h.     failing to monitor and supervise its agents and/or employees for violations of employee-student boundaries, including but not limited to electronic communications and grooming.

125.     Defendant Board's conduct herein was willful and wanton and with complete disregard to Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment against Defendant, for compensatory and punitive damages in an amount to be determined at trial, an award of reasonable attorneys' fees and costs, and any other relief as the Court deems equitable and just.

**COUNT VIII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**ALL DEFENDANTS**

126.     Plaintiffs reallege and incorporate Paragraphs 1-125 as though fully stated herein this Count VIII.

127.     At all times relevant, Defendant Bardfield had a duty to avoid intentionally and recklessly causing emotional injury and/or emotional distress to Plaintiff.

128.     Despite said duty, Defendant intentionally and recklessly caused emotional injury and /or emotional distress to Plaintiff when Defendant repeatedly engaged in un-permitted, harmful, and offensive sexual contact upon the person of Plaintiff.

129.     Despite said duty, Defendant failed to exercise reasonable care so as to not cause emotional injury and/or emotional distress to Plaintiff when Defendant repeatedly engaged in harmful psychological and emotional manipulation, grooming, and abuse of Plaintiff, a minor.

130.     As a direct and proximate result of the unlawful action of Defendant, Plaintiff JOHN DOE has suffered and continues to suffer severe and permanent injuries and damages, including without limitation severe and permanent psychological and emotional distress; physical manifestations of the aforesaid emotional distress; diminished ability to enjoy his life; loss of education; lost earnings and diminished earning capacity; and has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling, severe and permanent psychological, educational, and emotional injuries and damages, all of which caused and continue to cause JOHN DOE great pain and suffering, mental and emotional

distress, and have resulted in his diminished ability to enjoy his life, and is thus entitled to an award of monetary damages from the Defendant.

WHEREFORE, Plaintiffs pray for judgment against Defendants, for compensatory and punitive damages in an amount to be determined at trial, an award of reasonable attorneys' fees and costs, and any other relief as the Court deems equitable and just.

## COUNT IX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## ALL DEFENDANTS

131. Plaintiffs reallege and incorporate Paragraphs 1-130 as though fully stated herein this Count IX.

132. Defendant Board owed a duty to its students, including Plaintiff, to provide and employ competent teachers and safeguard its students, including Plaintiff, from harmful conduct perpetrated by Defendant Board's employees.

133. Defendant Board owed a duty to its students, including Plaintiff, to provide a safe and secure environment for public elementary educational pursuits.

134. Defendant Board breached these duties by:

a. allowing an environment where Defendant Bardfield could utilize school property, during school hours, without supervision of her activities, to engage in the grooming of Plaintiff;

b. allowing an environment where Defendant Bardfield could communicate with Plaintiff continuously and transmit Plaintiff sexually explicit content;

c. allowing an environment where Defendant Bardfield could lure students, including Plaintiff, to her home and sexually assault and abuse Plaintiff;

d. failing to ensure Defendant Bardfield took and completed training for adult sexual misconduct, ethics on sexual misconduct, recognizing and reporting child abuse, and title IX.

135.    No agent, servant, or employee of Defendant Board undertook appropriate measures to prohibit and prevent Defendant Bardfield from engaging in her inappropriate sexual abuse and harassament of Plaintiff.

136.    Defendant Board knew, or should have known, Defendant Bardfield was engaging in inappropriate sexual conduct with Plaintiff.

137.    As a direct and proximate result of the foregoing, Plaintiff suffered harm.

WHEREFORE, Plaintiffs pray for judgment against Defendants, for compensatory and punitive damages in an amount to be determined at trial, an award of reasonable attorneys' fees and costs, and any other relief as the Court deems equitable and just.

<u>**COUNT X**</u>
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (JAMES AND JANET DOE)**
**DEFENDANT BARDFIELD**

138.    Plaintiffs reallege and incorporate Paragraphs 1-137 as though fully stated herein this Count X.

139.    At all times relevant, Defendant Bardfield had a duty to avoid intentionally and recklessly causing emotional injury and/or emotional distress to Plaintiffs.

140.    Despite said duty, Defendant intentionally and recklessly caused emotional injury and /or emotional distress to Plaintiff when Defendant repeatedly engaged in un-permitted, harmful, and offensive sexual contact upon Plaintiffs minor child.

141.    Despite said duty, Defendant failed to exercise reasonable care so as to not cause emotional injury and/or emotional distress to Plaintiffs when Defendant repeatedly engaged in harmful psychological and emotional manipulation, grooming, and abuse of the minor child.

142.    As a direct and proximate result of the unlawful action of Defendant, Plaintiffs have suffered and continue to suffer severe and permanent injuries and damages, including

without limitation severe and permanent psychological and emotional distress; physical manifestations of the aforesaid emotional distress; diminished ability to enjoy their lives; and has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling, severe and permanent psychological, educational, and emotional injuries and damages, all of which caused and continue to cause Plaintiffs great pain and suffering, mental and emotional distress, and have resulted in his diminished ability to enjoy their lives, and is thus entitled to an award of monetary damages from the Defendant.

WHEREFORE, Plaintiffs pray for judgment against Defendant, for compensatory and punitive damages in an amount to be determined at trial, an award of reasonable attorneys' fees and costs, and any other relief as the Court deems equitable and just.

**COUNT XI**
**THEFT OF COMMUNICATION SERVICE**

143.    Plaintiffs reallege and incorporate Paragraphs 1-142 as though fully stated herein this Count XI.

144.    At all times relevant, there was an Illinois statute 720 ILCS 5/16-18 *et seq.* entitled "Tampering with communication services; theft of communication services" in effect.

145.    Said statute provides that a person commits theft of communication services when he or she knowingly obtains or uses a communication service without the authorization of or compensation paid to, the communication service provider.  720 ILCS 5/16-18(b).

146.    Said statute provides that any person aggrieved by a violation may bring a civil action in any court of competent jurisdiction.  720 ILCS 5/16-18(h).

147.    Defendant Bardfield committed theft of communication services when she knowingly took possession of Plaintiff cellular phone, navigated to the TikTok application, opened the application, and deleted the messages between herself and Plaintiff.

148.     As a direct and proximate result thereof, Plaintiffs suffered and continue to suffer including without limitation severe and permanent psychological and emotional distress; physical manifestations of the aforesaid emotional distress and diminished ability to enjoy his life, and is thus entitled to an award of monetary damages from Defendants.

WHEREFORE, Plaintiffs pray for judgment against Defendant, for compensatory and punitive damages in an amount to be determined at trial, an award of reasonable attorneys' fees and costs, and any other relief as the Court deems equitable and just.

## COUNT XII
### BATTERY
### ALL DEFENDANTS

149.     Plaintiffs reallege and incorporate Paragraphs 1-148 as though fully stated herein this Count XII.

150.     At all times relevant hereto, Defendant Bardfield, as employee and agent of Defendant Board, repeatedly engaged in unpermitted, harmful, and offensive sexual contact upon the person of Plaintiff JOHN DOE.

151.     At all times relevant hereto, JOHN DOE was a minor below the statutory age of consent in the State of Illinois and was therefore unable to consent to any sexual contact by an adult.

152.     At all times relevant hereto, Defendant Bardfield was an adult, over the age of legal majority.

153.     At all times relevant hereto, Defendant Bardfield knew that Plaintiff was a minor below the statutory age of consent in Illinois, and that Plaintiff was therefore unable to consent to any sexual contact by an adult.

154.     At all times relevant hereto, Defendant Bardfield had a duty to exercise reasonable care, so as to avoid causing injury and/or harmful or offensive contact to Plaintiff.

155.     Notwithstanding said duty, Defendant, Bardfield, intentionally and unlawfully made harmful and offensive contact with Plaintiff, which included but was not limited to psychological and emotional manipulation and abuse, as well as repeated sexual abuse.

156.     As a direct and proximate result of the unlawful action of Defendant, Plaintiff JOHN DOE has suffered and continues to suffer severe and permanent injuries and damages, including without limitation severe and permanent psychological and emotional distress; physical manifestations of the aforesaid emotional distress; diminished ability to enjoy his life; loss of education; lost earnings and diminished earning capacity; and has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling, severe and permanent psychological, educational, and emotional injuries and damages, all of which caused and continue to cause JOHN DOE great pain and suffering, mental and emotional distress, and have resulted in his diminished ability to enjoy his life, and is thus entitled to an award of monetary damages from the Defendant.

WHEREFORE, Plaintiffs pray for judgment against Defendant, for compensatory and punitive damages in an amount to be determined at trial, an award of reasonable attorneys' fees and costs, and any other relief as the Court deems equitable and just.

Respectfully submitted,

*/s/ Zack Reynolds*                         */s/ Aasim Cunningham*
Zack Reynolds                               Aasim Cunningham


Attorney for Plaintiffs                      Attorney for Plaintiffs
Cunningham Lopez LLP                          Cunningham Lopez LLP
120 W Madison St., Suite 611                  120 W Madison, Suite 611

Chicago, Illinois 60602
312-419-9611
Atty. No. 6330333
zr@cunninghamlopez.com

Chicago, Illinois 60602
312-419-9611
Atty. No. 6312608
arc@cunninghamlopez.com