IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JOHN DOE, a minor, by and through his Parents and next friends, JANET DOE and JAMES DOE, <br><br> Plaintiffs, <br><br> vs. <br><br> ALLEY BARDFIELD and BOARD OF EDUCATION OF DECATUR PUBLIC SCHOOLS d/b/a DECATUR PUBLIC SCHOOLD DISTRICT #61 d/b/a DECATUR PUBLIC SCHOOLS, <br><br> Defendants. | No. 24cv2156 |

**BRIEF IN SUPPORT OF**
**DEFENDANT BOARD OF EDUCATION OF DECATUR PUBLIC SCHOOLS'**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Defendant Board of Education of Decatur Public Schools d/b/a Decatur Public School District #61 d/b/a Decatur Public Schools (the "Board"), by counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully moves this Court to dismiss all claims against the Board for failure to state a claim upon which relief can be granted. Plaintiffs' claims against the Board should be dismissed for the following reasons:

- The constitutional claims against the Board pursuant to 42 U.S.C. § 1983 fail because the Board was not responsible for any alleged constitutional deprivations;

- The tort claims do not allege a special duty to John Doe and are barred by the Illinois Tort Immunity Act; and
- The Board is not vicariously liable under the doctrine of *respondeat superior* for the alleged sexual misconduct of Defendant Bardfield.

For these reasons, as more fully explained below, this Court should dismiss Counts I – IX and Count XII of Plaintiffs' Complaint against the Board, with prejudice.

## INTRODUCTION

On April 3, 2024 Defendant Alley Bardfield was arrested and admitted to sexual encounters with Plaintiff James Doe. *Compl*. ¶ 42 (Dkt. 1). From approximately October, 2023, until the time of her arrest, Bardfield was a substitute teacher at Hope Academy, a K – 8 school in Decatur Public School District #61 where Plaintiff John Doe was a sixth-grade student. Id. ¶¶ 10-11, 15. Prior to Bardfield's arrest, Defendant Board did not know about the sexual encounters between Bardfield and Plaintiff John Doe. *See generally*, *Compl*.

Defendant Bardfield was a substitute teacher at Hope Academy in Decatur for about 6 months – from October, 2023, until her arrest on April 3, 2024. *Compl*., ¶¶ 19 and 42. Plaintiff John Doe obtained Bardfield's personal cell phone number from another student prior to the alleged sexual encounters with Bardfield. *Id*. ¶ 22. Bardfield and Plaintiff John Doe communicated through their personal cell phones via text, Snapchat and TikTok, sometimes allegedly during school hours. *Id*. ¶¶ 29-31. Plaintiffs allege Bardfield sent naked pictures of herself and money to Plaintiff John Doe through personal apps Snapchat and Cash App. Id. ¶¶ 30, 34. Communicating with students via personal cell phones and social media accounts is a violation of Defendant Board's Code of Professional Conduct. *Id*. ¶ 23, 32. Defendant Board was

not aware that Bardfield was communicating with Plaintiff John Doe through her personal cell phone and social media accounts. *See generally*, *Compl*.

In March 2024, Plaintiffs allege that Bardfield performed oral and vaginal sex on Plaintiff John Doe while he was at her house. *Id*. ¶¶ 36-37. Then Bardfield tried to conceal her conduct by deleting TikTok messages from Plaintiff John Doe's phone after he left it unattended in a classroom. *Id*. ¶ 40. Bardfield was arrested shortly thereafter. *Id*. ¶ 42.

The events described above were all violations of various Board policies and guidelines. *Id*. ¶¶ 43-47. Plaintiffs allege that Bardfield – before or during her brief time as a substitute teacher at Hope Academy – did not complete training on adult sexual misconduct, ethics on sexual misconduct, recognizing and reporting child abuse, and Title IX. *Id*. ¶ 48. And Plaintiffs allege that Defendant Board was aware that Bardfield was not trained pursuant to Board policy and as required by 105 ILCS 5/10-23.13 (Erin's Law). *Id*. ¶¶ 49-51.

Plaintiffs filed their Complaint on June 28, 2024, seeking compensatory damages, punitive damages, and attorney fees from the Board under various theories of liability. The following counts were alleged against the Board:

- Count I, 42 U.S.C. ¶ 1983 – Equal Protection
- Count II, 42 U.S.C. ¶ 1983 – Substantive Due Process
- Count III, 42 U.S.C. ¶ 1983 – Due Process (Monell)
- Count IV, Negligent Hiring
- Count V, Negligent Supervision
- Count VI, Negligent Retention
- Count VII, Negligence
- Count VIII, Intentional Infliction of Emotional Distress

- Count IX, Negligent Infliction of Emotional Distress
- Count XII, Battery

**STANDARD OF REVIEW**

Defendant Board's Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. To state a claim under federal notice pleading standards, the Complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief...." Fed.R.Civ.P. 8(a)(2). Plaintiffs' factual allegations are accepted as true and need only give " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *EEOC v. Concentra Health Serv., Inc.,* 496 F.3d 773, 776–77 (7th Cir.2007), *quoting Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007) (other citation omitted). However, the plaintiffs' "... allegations, [must] show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir.2008) (internal citations omitted).

Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949–50 (2009), *citing Twombly,* 127 S.Ct. 1955. Legal conclusions, unsupported by alleged underlying facts, are not entitled to "the assumption of truth." *Id.* at 1951. The application of this standard is " 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir. 2009), *quoting Iqbal,* 129 S.Ct. at 1950.

**ARGUMENT**

1. **Counts I, II and III should be dismissed because the Board did not take any action that violates the United States Constitution.**

Counts I-III all allege violations of 42 U.S.C. § 1983 by the Board. Plaintiffs' must show that John Doe was "deprived of a right secured by the Constitution or federal law by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2002). Section 1983 claims can only be made against individuals who are "personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.* 305 F.3d 603, 614 (7th Cir. 2002). Plaintiffs' may not rely on *respondeat superior* to hold the Board responsible for the misconduct of Bardfield – the Board must have actually directed or consented to the misconduct. See *id*. at 614-15. It is not enough for Plaintiffs to allege the Board failed to act because negligence, even gross negligence, is not actionable under Section 1983. *Jones v. City of Chi.* 856 F.2d 985, 992-93 (7th Cir. 1988).

In Counts I – III Plaintiffs' allege that Defendant Board violated the 14th Amendment because the Board a) discriminated against John Doe because of his membership in a certain class of individuals, perhaps because of his sex; b) denied John Doe his due process rights by hiring Bardfield, but not properly training her; and c) employed a policy of not following its own polices, which denied John Doe his right to bodily integrity. These constitutional allegations are a bridge too far. The Board did not direct or consent to Bardfield's actions that caused John Doe's injuries. Put another way, nothing the Board did was the proximate cause of John Doe's injuries – those injuries were caused by Bardfield's independent choice to communicate with John Doe with her personal cell phone, then engage in sexual relations with John Doe at her house.

    a. **Count I (equal protection) should be dismissed because Plaintiffs' alleged no facts to support that the Board treated John Doe differently than some unidentified class.**

Plaintiffs do not even mention Defendant Board in their Count I allegations. *See Compl*. ¶¶ 71-78. And as discussed *supra*, the Board has no *respondeat superior* responsibility for any alleged constitutional violations by Bardfield. Reading the allegations in the Complaint generously, Plaintiffs may be alleging that John Doe was a "class of one" who was intentionally treated differently than others similarly situated without a rational basis for the disparate treatment. *See Engquist v. Oregon Dept. of Ag.*, 553 U.S. 591, 601 (2008). However, the Board did not treat John Doe differently, nor did it treat the sexes differently. Plaintiffs allege that the Board failed to follow its own policies and at least one statute (Erin's law) when it failed to properly train Bardfield before and after hiring her. *See Compl*. ¶¶ 56-60. Inaction, i.e. failing to properly train Bardfield, does not create a Section 1983 claim. *See Jones*, 856 F.2d at 992-93. And inaction would affect all students equally. Plaintiffs do not allege that Defendant Board treated John Doe differently than his peers so Count I should be dismissed.

      **b. Count II (due process) should be dismissed because the Board did not know about Defendant Bardfield's actions before she was arrested, and the Board did not create a danger to Plaintiff .**

Plaintiff John Doe has a constitutional right to bodily integrity, and the allegations against Defendant Bardfield are that she violated that right under the color of state law. See *Compl*. ¶¶ 80-83. The Count II allegations against the Board, however, are that it did not properly train Bardfield on Board policies, which created an increased risk of harm to Plaintiff John Doe. Id. ¶¶ 84-87. Those allegations against the Board do not state a substantive due process claim because there is no allegation the Board "turned a blind eye to *constitutional violations* thereby allowing a climate to flourish where innocent students are victimized." *Doe 20 v. Bd. of Educ. of Cmty. Unit Schl. Dist. No. 5*, 680 F.Supp.2d 957, 973 (C.D. Ill. 2010) *quoting Sandra v. Sperlik*, 639 F.Supp.2d 912, 922 (N.D. Ill. 2009) (internal citations omitted) (emphasis supplied).

Plaintiffs cannot allege the Board knew about the sexual encounters between Bardfield and John Doe then failed to intervene, so there is no due process claim for the Board's failure to act on a known constitutional violation.

Because they cannot make the traditional "blind eye" allegation, Plaintiffs instead allege that the Board's failure to properly train Bardfield was, by itself, a due process violation. The purpose of the Due Process Clause is "to protect the people from the State, not to ensure the State protected them from each other." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989). Plaintiffs seem to invoke the "state-created danger" exception to this general rule by making the allegations that the Board failed to properly train Bardfield. To prevail under this exception, Plaintiffs must show three things:

(1) that the State… by its affirmative acts created or increased a danger that [John Doe] faced;
(2) that [Defendant Board's] failure to protect [John Doe] from danger was the proximate cause of [his] injury; and
(3) that [Defendant Board's] failure to protect [John Doe] shocks the conscience.

*D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015). Here, Plaintiffs do not allege any affirmative act by the Board that proximately caused his injury.

In *Doe v. Dist. U-46, et al.*, even though a school administrator moved the Plaintiff closer to his bullies on the school bus, the Northern District of Illinois decided that the "state-created danger" exception did not apply because the school defendant did not "create or increase" the danger. *Doe v. Sch. Dist. U-46, et al.*, 557 F.Supp.3d 860, 873 (N.D. Ill. 2021). Here, the Board took zero affirmative actions – it did not even know about Bardfield's alleged sexual misconduct until after her arrest. *See generally*, Compl. Plaintiffs' allegations here that the Board failed to properly train Bardfield before hiring her amount to a failure to protect claim, which the 7th Circuit held is not a due process violation. *See Doe v. Vill. of Arlington Heights*, 782 F.3d 911,

917 (7th Cir. 2015) (cautioning that the state-created danger exception "must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect").

The Board did not create the danger to John Doe and it did affirmatively act to increase the danger to him. Count II should be dismissed.

### c. The Board did not commit a *Monell* due process violation (Count III) when it failed to follow its own training policy with Bardfield.

In Monell, our United States Supreme Court held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 694 (1978). Plaintiffs attempt to shoehorn a *Monell* claim by alleging that the Board had a practice of failing to follow its own training policies. *See Compl*. ¶¶ 93-96. But even taken as true – that the Board had a policy of not following its own policy – that inaction did not "inflict the injury" upon John Doe, i.e. the "policy" did not cause a violation of John Doe's right to bodily integrity or equal protection. And because a policy of not training staff pursuant to Board policy and state law is not a constitutional violation in itself, it cannot be the basis for a *Monell* claim. *See Sallenger v. City of Springfield*, 630 F.3d 499, 505 (7th Cir. 2010) ("Accordingly, because there is no underlying constitutional violation, the City cannot be liable under *Monell*.").

In *Moore v. Freeport Community Unit Sch. Dist. No. 145*, the Northern District recently encountered a similar allegation where Plaintiff alleged a *Monell* violation when the District allegedly maintained a policy of failing to train on sexual harassment prevention. *Moore*, 570 F.Supp.3d 601, 612 (N.D. Ill. 2021). But because the failure to follow policy, even a "safety plan" developed for Moore, was not a constitutional violation, the Court held that no *Monell*

claim existed. *Id*. And in *Doe 20 v. Bd. of Educ. of Community School Dist. No. 5*, Plaintiffs alleged the District "established a de facto custom and practice of ignoring and concealing teachers' sexual abuse of students," but this Court found that the Plaintiffs' injuries (grooming and sexual assault) were not attributable to a District policy or practice. *Doe 20 v. Bd. of Educ. of Community School Dist. No. 5*, 680 F.Supp.2d 957, 978-79 (C.D. Ill. 2010). Here, like in *Doe 20*, there is no "plausible inference" that the failure to train Bardfield according to Board policies was "a permanent and well-settled… custom or practice." *Doe 20*, 680 F.Supp.2d 979. But even if it was, a Board policy of failing to train is not a violation of John Doe's constitutional rights, so it cannot be the basis of a *Monell* claim. Count III should be dismissed.

2. **Counts IV – VII and IX should be dismissed because they are negligence-based claims that are barred by the Local Government and Governmental Employees Tort Immunity Act.**

Plaintiffs make five (really four) negligence-based claims against the Board: negligent hiring, negligent supervision, negligent retention, negligence, and negligent infliction of emotional distress (NIED). "Illinois law does not distinguish between the tort of negligent supervision from the tort of negligent retention." *Swift v. BPI Energy, Inc.*, 2011 WL 4001359 (C.D. Ill. Sept. 7, 2011) citing *Zahl v. Krupa*, 927 N.E.2d 262, 283 (Ill.Ct.App. 2010). Regardless, the Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10 (the "Act") shields the Board from liability for all these negligence-based claims. Section 2-201 of the Act states:

> Except as otherwise provided by statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201. The Board actions complained of were discretionary, and there is no allegation of willful and wanton misconduct. The purpose of Section 2-201 of the Act was to immunize defendants like the Board from exactly these types of negligence-based claims.

> a. **Count IV (negligent hiring) should be dismissed because the act of hiring is an exercise of discretion so the Board is immune from liability pursuant to Sectio 2-201 of the Act.**

The basis for Plaintiffs' negligent hiring claim is that Bardfield did not complete certain training before she was hired, and the Board knew it.[1] Plaintiffs do not allege a legal or policy-based requirement that the Board ensure that Defendant Bardfield underwent training, including Erin's Law training[2], pre-hire, i.e. there is no allegation of a pre-hire duty to train. Even if Plaintiffs made an allegation that the Board had a duty to train Bardfield before it hired her, this Court held: "[c]ase law concludes that hiring and firing are discretionary decisions." *Doe 20 v. Bd. of Educ. of Cmty. Sch. Dist. No. 5*, 680 F.Supp.2d 957 (C.D. Ill. 2010). And Plaintiffs allege the Board made policies regarding who was trained and when. *See Compl.* ¶¶ 43-47 and 58-60. Therefore, Section 2-201 of the act immunizes the Board from the negligent hiring claim because the Board determined the policies at issue, and was exercising its discretion to hire Bardfield. *See Doe 20*, 680 F.Supp.2d 988 *citing Van Meter v. Darien Park District*, 799 N.E.2d 273 285-86 (Ill. 2003) ("For § 2-201 immunity to apply, the local public [entity] must have been making a policy choice and exercising discretion."). Count IV (negligent hiring) should be dismissed.

> b. **Count V (negligent supervision) and Count VI (negligent retention) are duplicative and should both be dismissed for the same reasons: Plaintiffs do**

---

[1] A negligent hiring claim also requires that the unfitness of the hired employee was the proximate cause of the claimed injury. *See Fallon v. Indian Trail School, Addison Township School District No. 4,* 500 N.E.2d 101, 103-04 (Ill. 1986). But the Court need not engage in a proximate cause analysis because the Board is immune under the Act.

[2] Erin's Law requires school personnel training in "preventing, recognizing, reporting, and responding to child sexual abuse and grooming behavior" before January 31st of each year. *See* 105 ILCS 5/10-23.13.

### not allege willful and wanton conduct by the Board, and the Board did not continue to employ Bardfield after it knew of her actions.

As discussed in Section 2, *supra*, negligent supervision and negligent retention are not separate torts in Illinois. For the purposes of this motion, Defendant Board will address the combined allegations in Count V and Count VI as one claim. In those combined claims (C*ompl.* ¶¶ 109-117) Plaintiffs do not allege the Board engaged in willful and wanton conduct, so the Board is immune from these claims under Section 3-108[3] of the Act. *See Van Meter*, 799 N.E.2d 280 (Ill. 2001) (the Act provides affirmative defenses); *see also Sidney Hillman Health Ctr. of Rochester v. Abbott Labs, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (holding that plaintiffs may plead themselves out of court by alleging facts sufficient to establish the affirmative defense in the complaint itself, making dismissal appropriate). Because Plaintiffs fail to allege that the Board engaged in willful and wanton conduct, Counts V and VI should be dismissed.

Even if Plantiffs did allege that the Board engaged in willful and wanton conduct, Counts V and VI still fail because the Board did not have knowledge that Bardfield previously engaged in similar behavior. Plaintiffs allege that the following conduct amounts to negligent supervision/retention: Barfield was allowed to text students, including Plaintiff; the Board failed to ensure Bardfield abided by its policies; the Board allowed Bardfield to lure children, including Plaintiff, to her home; and the Board allowed Bardfield to sexually abuse Plaintiff. *See Compl*, ¶¶

---

[3] Section 3-108 of the Act states:
  a. Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing injury.
  b. Except as otherwise provided in this Act, neither a local public entity nor a public employee is liable for an injury caused by failure to supervise an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision.

112(a) – (f) and 115-16. But "[i]n light of the breadth of Section 3-108, the Board is immunized against Plaintiffs' negligence claim for failure to supervise, monitor, direct, and instruct its employees." *Doe v. Bd. of Educ. of City of Chicago*, 611 F.Supp.3d 516, 543 (N.D. Ill. 2020).

The exception to the immunity afforded by Section 3-108 is for willful and wanton conduct. In the context of negligent supervision/retention claims, "to successfully maintain a willful and wanton failure to supervise claim against a public entity, a plaintiff must show that the defendant engaged in a 'course of action that proximately caused the plaintiff's injuries, including having prior knowledge of similar incidents.'" *Sterling v. Bd. of Educ. of Evanston Twp. High Sch. Dist. 202, et al.*, 2021 WL 809763 *8 (N.D. Ill. 2021) *citing S.J. v. Perspectives Charter Sch.*, 685 F.Supp.2d 847, 859 (N.D. Ill. 2010).

Besides actual knowledge of similar incidents, the Northern District also considers "knowledge of facts which would disclose [the] danger to any reasonable man" sufficient to allege willful and wanton conduct. *Doe v. Bd. of Educ. of City of Chicago*, 611 F.Supp.3d 516, 544 (N.D. Ill. 2021) *citing Barr v. Cunningham*, 89 N.E.3d 315, 319 (Ill. 2017). "Plaintiffs can state a claim for willful and wanton conduct based only on the defendant's knowledge of the *risk* of misconduct. *Id*. (internal citation omitted) (emphasis in original).

Here, Plaintiffs cannot allege that the Board knew of prior incidents involving Bardfield. *See generally*, Compl. Any basis for a willful and wanton conduct must be rooted in an allegation that the Board knew of a risk of misconduct, but the Board was not on notice of any risk of sexual misconduct by Bardfield while it employed her for six months as a substitute teacher. The Board was not informed of a bullying situation, like in *Doe v. Sch. Dist. U-46*[4]; there is no allegation the Board knew of grooming behaviors like in *Sterling v. Bd. of Educ. of Evanston*

---

[4] 567 F.Supp.3d 860 (N.D.Ill 2021).

*Twp. High Sch. Dist. 202, et al.*[5]; and the Board did not skip a legally required background check that would have revealed crimes of moral turpitude like in *Mueller by Math v. Cmty. Consol. Sch. Dist. 54*[6]. Not properly training Defendant Bardfield about how to spot and report child sexual abuse is simply not enough to obviate the statutory protection of Section 3-108 – the Board had no "unique knowledge that one of its teachers or students pose[d] a particular threat…" *Dist. U-46*, 557 F.Supp.3d 878. Counts V and VI should be dismissed.

> c. **Count VII (general negligence) and Count IX (NIED) should be dismissed because they allege violations of policy covered by Section 2-201 of the Act, and the remainder of the allegations are re-packaged from Counts V and VI discussed above.**

In Count VII, Plaintiffs regurgitate the allegations that the Board failed to follow its own policies and Erin's Law, but adds that this failure was "willful and wanton." *Compl*. ¶¶ 121-23. As discussed in Section 2(a), *supra*, the Board's policies and its exercise of discretion in following or not following those polices are covered by Section 2-201 of the Act. The immunity afforded by Section 2-201 protects against both negligent and willful and wanton conduct. *Doe v. Bd. of Educ. of the Cmty. Unit Sch. Dist. No. 5*, 680 F.Supp.2d 957, 988 (C.D. Ill. 2010). Simply adding the words "willful and wanton" to the same allegations does not strip the Board of the immunity afforded by the Act.

Count VII also re-alleges the negligent hiring and negligent supervision/retention claims, then adds that the conduct was "willful and wanton." *Compl*. ¶¶ 124-25. But for the same reasons discussed in Sections 2(a) and (b), *supra*, the Act and case law require dismissal of Count VII. Section 2-201 of the act provides immunity to the Board for the discretionary act of hiring Bardfield; and Section 3-108 provides immunity where there was no willful and wanton conduct

---

[5] 2021 WL 809763 (N.D.Ill, Sept. 3, 2021).

[6] 678 N.E.2d 660 (Ill.Ct.App. 1997).

in supervising Bardfield, i.e. the Board had no notice of prior incidents or an increased risk that Bardfield would allegedly commit sexual misconduct.

Count IX (NIED) should be dismissed for the same reasons as the negligent retention/supervision claims discussed *supra*: Plaintiffs do not allege that Defendant Board's conduct was willful and wanton; and Plaintiffs do not allege a special duty. As with those other negligence-based claims, the Board did not acquire a special duty – it did not possess "unique knowledge that one of its teachers or students poses a particular threat to another student." *Sch. Dist. U-46*, 557 F.Supp.3d at 878 (internal citations and quotations omitted). Both Counts VII and IX should be dismissed.

3. **The Board has no respondeat superior liability to Plaintiffs for Count VIII (IIED) and Count XII (battery).**

Plaintiffs do not make direct allegations against Defendant Board in either Count VIII (IIED) or Count XII (Battery) so we must assume they allege vicarious liability. *See Compl*. ¶¶ 126-30 and 138-42. The basis for both intentional torts is the alleged grooming and sexual contact perpetrated by Defendant Bardfield. However, Illinois law is consistent: an employee's acts of sexual misconduct cannot be the basis for *respondeat superior* liability of the employer. "Plaintiffs cannot press claims against the District under the *respondeat superior* doctrine, and Plaintiffs' assault and battery and intentional infliction of emotional distress claims against the District are DISMISSED WITH PREJUDICE." *Deborah K. v. Sperlik*, 2005 WL 3299804 *3 (N.D. Ill. Nov. 30, 2005) (emphasis in original). *See also Delony v. Bd. of Educ. of Thornton Twp.*, 666 N.E.2d 797-98 (Ill.Ct.App. 1996) (holding that acts of sexual misconduct were outside the scope of the truant officer's employment as a matter of law). Counts VIII and XII should be dismissed.

# CONCLUSION

For the reasons state above, Defendant Board respectfully requests that all claims against it be dismissed with prejudice.

Respectfully submitted,

By: /s James A. Piatt_____

James A. Piatt
Atty Reg. No. 6347995
Matthew J. Walters
Atty No.
Miller, Tracy, Braun, Funk, and Miller, Ltd.
316 S. Charter, P.O. Box 80
Monticello, Illinois, 61856
Tel: 217-762-9416
jpiatt@millertracy.com
mwalters@millertracy.com
Attorneys for Defendant Board of Education of Decatur Public Schools

# CERTIFICATE OF SERVICE

I hereby certify that on September 9th, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the following:

*Attorneys for Plaintiff*

Zack Reynolds
Cunningham Lopez LLP
120 W. Madison St., Suite 611
Chicago, Illinois 60602
312-419-9611
Atty. No. 6330333
zr@cunninghamlopez.com

Aasim Cunningham
Cunningham Lopez LLP
120 W. Madison St., Suite 611
Chicago, Illinois 60602
312-419-9611
Atty. No. 6312608
arc@cunninghamlopez.com

/s/ James A. Piatt
James A. Piatt